LIESELOTTE HALL, Personal Representative of the Estate of Leevester Hall, Deceased, Plaintiff-Appellant, v. ROBERT O. STAMM, Defendant-Appellee.

Fifth District   No. 5—89—0264

Opinion filed February 7, 1991.

WELCH, J., dissenting.

Ira M. Young and Edward L. Welch, both of St. Louis, Missouri, for appellant.

Gordon R. Broom and J. Todd Hayes, both of Burroughs, Simpson, Hepler, Broom & MacDonald, of Edwardsville, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

On April 30, 1986, Leevester Hall was struck and killed by a tractor trailer unit driven by Robert Stamm. The accident occurred on Interstate Highway 64 at approximately the nine-mile marker. Interstate 64 is a level, four-lane divided highway which runs in an east-west direction at this point. Each lane is 12 feet wide and the east and westbound lanes are separated by a grass median. There is also an asphalt shoulder on each side of the westbound traffic lanes.

Defendant Robert Stamm is a self-employed trucker who was hauling commodities on a regular basis for U.S.G. Industries, which is located in Pinckneyville, Illinois. He had left his home the morning of April 30, 1986, at approximately 6:30 a.m. and had made two deliveries to Pinckneyville. At the time of the accident he was returning to Madison, Illinois, to pick up another load. He had taken Highway 127 north to Interstate 64 and was proceeding west on Interstate 64 when the accident occurred. It had rained earlier and the pavement was wet. The area was dark and had no artificial lights.

Approximately 400 to 500 feet east of the accident point, Stamm noticed a car parked on the asphalt shoulder of the left or passing westbound lane. Stamm was in the left lane traveling at approximately 50 miles per hour. There were two cars traveling west in the right lane, the foremost of which was at approximately the truck's rear wheels when the accident occurred. There is no indication in the record of why Stamm did not pass the two cars in the righthand lane in the 400- to 500-foot interval before he arrived at a point where the parked vehicle was located.

As Stamm continued to proceed west in the passing lane, the decedent appeared in front of him. The decedent was struck at about the middle of Stamm's eight-foot-wide Peterbilt tractor, and he was pronounced dead at the scene.

On March 31, 1989, the trial judge allowed the defendant's motion for summary judgment and the plaintiff appealed.

Plaintiff's complaint alleged, among other things, that the defendant was negligent in that:

"a) Defendant operated his vehicle at a rate of speed which was high, dangerous and excessive under the circumstances then and there existing.

b) Defendant failed and omitted to keep a careful lookout for persons along said highway, and more particularly for plaintiff's decedent.

c) Defendant failed and omitted to sound a warning or give a signal of the approach, movement or proximity of his vehicle.

d) Defendant failed to swerve, slow, or stop his vehicle when by doing so he could have thereby avoided the collision with plaintiff's decedent."

Defendant contends that under this set of facts the trial court acted properly in allowing his motion for summary judgment. Plaintiff contends that there are genuine issues of material fact that preclude the granting of summary judgment. Plaintiff maintains that the defendant admitted to investigating State Trooper Kistner that when he first noticed the parked vehicle he thought it was a police car running radar and was watching the parked vehicle when all of a sudden he looked up and saw the pedestrian on the roadway. No tickets were issued, but Trooper Kistner listed driver distraction as a contributing cause of the accident. Plaintiff also argues that the defendant told another trooper, Mr. Hall, that he remembered seeing the man on the shoulder by the car, but did not know if the man was in front of or behind the car.

● ■ The motion for summary judgment is a drastic remedy and should be allowed only when there is no genuine issue of material fact to be decided. (*Gatlin v. Ruder* (1990), 137 Ill. 2d 284, 560 N.E.2d 586.) In making this determination, the trial court may examine affidavits and other appropriate materials, but it must be remembered that the purpose of the motion is to determine whether there is a triable issue of fact not which party is likely to prevail at trial. (*McHenry Sand & Gravel, Inc. v. Rueck* (1975), 28 Ill. App. 3d 460, 328 N.E.2d 679.) A hearing on a summary judgment motion is not a mini-trial; the party opposing the motion is not required to try its case at that time; it need only present evidence sufficient to establish a dispute as to a material issue of fact. (*Burns v. Grezeka* (1987), 155 Ill. App. 3d 294, 508 N.E.2d 449.) In making its ruling, the trial court should examine the evidence and the inferences that can be drawn from the evidence in the light most favorable to the party opposing the motion. *Clausen v. Ed Fanning Chevrolet, Inc.* (1972), 8 Ill. App. 3d 1053, 291 N.E.2d 202.

■ Applying these standards to the case at hand, we must conclude that the trial court erred in granting the defendant's motion for summary judgment. In reaching this conclusion, we acknowledge that this is a case that the plaintiff may well lose at trial. From the record it appears that the defendant was traveling within the speed limit and in his own lane of traffic on an interstate highway when he was confronted with a pedestrian in front of his truck. Many, perhaps all, the members of a jury will conclude that under those circumstances the defendant was not negligent. Indeed, if those were the only facts be-

fore the trial court we would affirm his ruling. However, the facts are not so limited. The record also reveals that the defendant first saw the car parked on the left shoulder from a distance of 400 to 500 feet and that he made no attempt to move his vehicle to the right lane by either speeding up to pass the cars on his right or to slow down to allow the cars to move ahead of him so that he could pull over to the right lane. The record also reveals that a contributing cause of the accident might be the distraction on the part of the defendant caused by his mistaken impression that the parked vehicle was a police car running radar and the fact that he focused his attention on it rather than on the possibility of pedestrians in the neighborhood of the parked car. There is also a dispute in the record as to where and when the defendant first became aware that there was a pedestrian in the neighborhood of the parked car. Finally, the defendant did not slow or sound his horn during the 400 to 500 feet his truck traveled in approaching the decedent.

Lest our decision be misconstrued, we are not holding, as a matter of law, that a driver must slow his vehicle, sound his horn, or change his lane of traffic when he approaches a vehicle parked on the shoulder. When, however, a parked vehicle is within two feet of the graveled edge of an interstate highway on a dark night, it is certainly foreseeable that there may be pedestrians in the area or even persons working upon that vehicle. Under those circumstances a jury might conclude that the defendant's failure to take any of the actions set forth in plaintiff's complaint constituted negligence. It is a jury's function to make those determinations. Therefore, the trial court erred in allowing the defendant's motion for summary judgment.

Reversed and remanded.

HARRISON, J., concurs.

JUSTICE WELCH, dissenting:

I respectfully dissent because, although there is contradictory evidence as to exactly when and where defendant first saw decedent, under any possible version of the facts, defendant was in the exercise of ordinary care and could not have avoided hitting decedent. Therefore, defendant is entitled to judgment as a matter of law.

The only facts which are contradictory are whether defendant's attention was distracted from the roadway immediately in front of him because he was concerned whether the car parked on the shoulder was a police car, and whether defendant saw decedent standing

on the shoulder of the road either in front of or behind the parked car sometime prior to the impact. However, even if defendant was looking primarily at the car parked on the shoulder, his field of vision would have included anyone standing in the roadway. Defendant did not see anyone standing in the roadway until immediately prior to impact because, presumably, no one was there until immediately prior to the impact. Furthermore, even if defendant had seen decedent standing on the shoulder, he had no reason to suspect that decedent might dart onto the roadway in the path of his truck until decedent did so.

In any event, defendant exercised reasonable care under the circumstances. His vision extended only 500 feet ahead of him at the most. It was a dark night, and the only illumination came from the headlights of the vehicles on the roadway. The pavement was wet, and there was a car in the right lane beside him, making it impractical for him to swerve to the right or switch lanes. Defendant could not swerve to the left because of the parked car. He could not have stopped or appreciably slowed his truck even had he seen decedent in the roadway under either version of the facts. Defendant could have done nothing to avoid this accident. Under either version of the facts, defendant is entitled to judgment as a matter of law. The trial court properly entered summary judgment in favor of defendant.