EARL TALIAFERRO et al., Plaintiffs, v. ONE GRAND PLACE VENTURE et al., Defendants and Co-Appellants (Country Gas Company, Codefendant-Appellee and Counterdefendant and Third-Party Defendant-Appellee; Wirtz Rentals Company, Counterplaintiff and Third-Party Plaintiff-Appellant).

First District (3rd Division)   No. 1—92—1242

Opinion filed December 22, 1993.

Williams & Montgomery, Ltd., of Chicago (James K. Horstman, Barry L. Kroll, Anthony J. Kiselis, and Lloyd E. Williams, Jr., of counsel), for appellant Wirtz Rentals Company.

Charles F. Redden and James A. LaBarge, both of Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and Anne Scheitlin Johnson, of counsel), for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

This case involves consolidated actions that arise from a fire caused by the explosion of a propane tank at a construction site. Several claimants brought suit for alleged injuries and damages against Wirtz Rentals Company (Wirtz Rentals) and Country Gas Company (Country Gas) alleging the liability of each party on various grounds. Wirtz Rentals filed third-party complaints against Country Gas and now appeals the trial court's order granting summary judgment in favor of Country Gas.

We reverse and remand because genuine issues of material fact exist precluding the entry of summary judgment for Country Gas.

On December 28, 1985, a heater and propane tank assembly ruptured which resulted in an explosion and allegedly caused a fire at a construction site near 516 North Clark Street, a building commonly known as the St. Regis Hotel. The complaints generally alleged that Wirtz Rentals was liable on the grounds that it supplied the heater and propane tank which exploded and that Country Gas was responsible on the theory that it negligently inspected or filled the propane tank involved in the accident.

At issue in the present appeal are the third-party complaints filed by Wirtz Rentals against Country Gas asserting that Country Gas was responsible for the alleged losses based on the allegation that Country Gas negligently inspected, tested and filled the tank. In its answer to these complaints, Country Gas denied that it ever owned, filled, processed, inspected or otherwise controlled the tank involved in the accident.

Country Gas moved for summary judgment on the theory that the evidence did not reveal a nexus between Country Gas and the tank at issue. In response, Wirtz Rentals maintained that the record contained sufficient evidence to show a substantial likelihood that Country Gas was the last propane supplier to fill the tank in question. Assuming that Country Gas was not the last filler, Wirtz Rentals also

contended that the evidence reveals Country Gas must have inspected the tank, either just before the occurrence or at some point before the last filling of the tank.

The record discloses, and the parties agree, that Wirtz Rentals was the sole supplier of propane tanks and heaters for the construction site. In turn, Country Gas had an exclusive relationship with Wirtz Rentals in which only Country Gas serviced all tanks used by Wirtz Rentals from 1981 to late 1985. Thereafter, Tulsa Power Service (Tulsa Power) was the sole source of propane gas for Wirtz Rentals.

As part of their arrangement, Country Gas agreed that it would inspect each tank every time it was filled. If any damage were found, such as a leaky valve, the tank would be repaired.

Customarily, Wirtz Rentals would call Country Gas and order a certain number of tanks to be delivered. Country Gas would then deliver the number of tanks ordered to the site and, at the time of delivery, would pick up any empty tanks and return them to its plant. The number of tanks which accumulated at the site was referred to as a "float" and represented the outstanding number of tanks at the site.

On November 14, 1985, Tulsa Power filled 16 tanks for Wirtz Rentals but the record does not reveal if any of these 16 tanks went to the construction site. On November 22, 1985, *i.e.*, one month before the accident, Country Gas delivered its last tank to Wirtz Rentals. Two days before the accident (December 26, 1985), Wirtz Rentals had a stockpile or "float" of 55 tanks serviced by Country Gas. Five days after the accident (January 2, 1986), Wirtz Rentals still retained at least 31 Country Gas tanks. The last Country Gas tank at the site was picked up on June 13, 1986.

The only tanks filled by Country Gas belonged to either Country Gas or Wirtz Rentals. To identify the owner of a tank, Country Gas painted the collar of its cylinders blue and Wirtz Rentals painted the whole top of the tank yellow. In addition to the color coding, Country Gas engraved many of its tanks with the inscription "Property of Country Gas."

The owner of the tank which exploded could not be positively identified. By affidavit, one expert attested that he examined the tank and found evidence that the propane cylinder had been painted "a yellow or beige color." A Wirtz Rentals' foreman testified that he observed several colors on the tank, including yellow, blue, black and silver. The president of Country Gas testified that he examined the tank, did not see any identifying paint marks and believed that Wirtz Rentals painted their tanks beige-orange, not yellow.

The tank at issue had "Prop. of Flame Gas Corp." (Flame Glass) engraved upon it. Flame Gas was a propane gas company which had gone out of business before 1985. Almost all cylinders owned by Wirtz Rentals indicated the name of a defunct propane gas company.

Two experts attested that the subject tank revealed corrosion damage which caused the tank to rupture and the corrosion was visible to the eye at least nine months and probably more than one year before the accident. One expert opined that "the base of the tank had developed thin areas due to corrosion" which resulted in the actual rupture of the tank and that the corrosion damage would have been visible to any person filling the tank for longer than one year. Another expert attested that the "corrosion was visible on the underside of the subject propane cylinder for a period of at least nine (9) months prior to this occurrence and probably longer."

The trial court granted summary judgment to Country Gas, reasoning that "the real facts here are Wirtz Rental possibly were the owners [of the tank] and possibly Tulsa."

On appeal Wirtz Rentals asserts that sufficient circumstantial evidence to withstand summary judgment exists to demonstrate that Country Gas negligently filled or inspected the tank which exploded. We agree.

An appeal involving the propriety of a summary judgment order is subject to a *de novo* standard of review. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 102, 607 N.E.2d 1204.

Summary judgment is proper when the pleadings, depositions and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c).) Only when the right of the moving party is clear and free from doubt should summary judgment be granted. *Loyola Academy v. S&S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 271, 586 N.E.2d 1211.

■ A summary judgment proceeding is not a mini-trial. (*Hall v. Stamm* (1991), 208 Ill. App. 3d 83, 85, 566 N.E.2d 995.) To withstand a summary judgment motion, the nonmoving party need not prove his case at this preliminary stage but must present some factual basis that would support his claim. *Ralls v. Village of Glendale Heights* (1992), 233 Ill. App. 3d 147, 151, 598 N.E.2d 337; *Kuwik v. Starmark Star Marketing & Administration, Inc.* (1992), 232 Ill. App. 3d 8, 12, 597 N.E.2d 251, *aff'd* (1993), 156 Ill. 2d 16, 619 N.E.2d 129.

At the summary judgment stage, the court must construe the evidence strictly against the movant and liberally in favor of the non-

movant. (*Gatlin v. Ruder* (1990), 137 Ill. 2d 284, 293, 560 N.E.2d 586; *Pyne v. Witmer* (1989), 129 Ill. 2d 351, 358, 543 N.E.2d 1304.) A court cannot decide factual disputes as a matter of law. *Gatlin*, 137 Ill. 2d at 294.

Our duty as a reviewing court is not to judge the strength of the evidence or to weigh the credentials, credibility and testimony of one deponent against another. (*Gatlin*, 137 Ill. 2d at 293.) Circumstantial evidence sufficient to withstand summary judgment need not exclude all other possible inferences. (*Pyne*, 129 Ill. 2d at 369.) Where reasonable persons could draw divergent inferences from undisputed facts, summary judgment is not appropriate. (*Loyola Academy*, 146 Ill. 2d at 272.) All reasonable inferences must be drawn in favor of the party opposing the summary judgment motion. *Delaney Electric Co. v. Schiessle* (1992), 235 Ill. App. 3d 258, 264, 601 N.E.2d 978.

■ In light of these standards, we find that the record in the present case sufficiently establishes triable issues of fact. There is no dispute that Wirtz Rentals was the sole supplier of propane tanks to the construction site where the accident occurred and that Country Gas exclusively filled the propane tanks for Wirtz Rentals from 1981 until late 1985 with the last delivery made on November 22, 1985. Although an invoice shows that Tulsa Power filled 16 tanks for Wirtz Rentals on November 14, 1985, there is no evidence that these tanks were ever brought to the construction site. Even assuming that 16 tanks filled by Tulsa Power were on the site, the stockpile of tanks filled by Country Gas numbered 55 only two days prior to the accident.

Tanks filled by Country Gas were to be inspected by Country Gas. The evidence shows that the corrosion of the tank at issue was visible to the bare eye and was present months before the explosion.

Moreover, the charred remains of the tank exhibited several paint colors which suggests that the tank was handled, filled or inspected by Country Gas. The testimony demonstrates that tanks were identified by their painted colors and that the coloration of the tank was disputed.

We conclude that summary judgment was improperly entered in favor of Country Gas because the inferences which may be reasonably drawn from these circumstances raise genuine issues of material facts regarding Country Gas' negligence in filling or inspecting the tank.

Reversed and remanded.

TULLY, P.J., and CERDA, J., concur.